UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SUSAN CARNABY, INDIVIDUALLY and as REPRESENTATIVE OF THE ESTATE OF ROLAND CARNABY, DECEASED,<br><br>    Plaintiff,<br>v.<br><br>CITY OF HOUSTON, CHARLES FOSTER, AND ANDREW J. WASHINGTON,<br><br>    Defendant. | § § § § § § § § § § § § § § § §  CIVIL ACTION NO. 4:08-cv-1366 |

## MEMORANDUM AND ORDER

Before the Court are Defendants' Joint Motion to Strike Testimony of Plaintiff's Expert Roger Clark (Doc. No. 83) and Defendants' Joint Motion to Strike Designation of Expert Witness List [sic] Supplemental Report of Roger Clark (Doc. No. 118). After considering the arguments made in briefing, the testimony at the *Daubert* hearing, and the relevant law, the Court finds that Defendants' Joint Motion to Strike Testimony of Plaintiff's Expert Roger Clark should be denied in part and granted in part, and Defendants' Joint Motion to Strike Designation of Expert Witness List Supplemental Report of Roger Clark should be denied.[1]

I.   **STANDARD FOR EXPERT TESTIMONY**

---

[1] Defendants move to strike Clark's Supplemental Report because it was filed after his deposition and the close of discovery. Because the Court's reliance on the Supplemental Report does not prejudice Defendants, and because it is this Court's practice to decide matters on the merits rather than technicalities, Defendants' Motion to Strike the Supplemental Report will be denied.

1

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed.R.Evid. 702. The requirement that the testimony "assist the trier of fact" means the evidence must be relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). In evaluating the admissibility of expert testimony, the court should "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006). While the *Daubert* factors are particularly helpful in assessing scientific testimony, the proper factors depend on the nature of the issue, the particular expertise, and the subject of the testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 136, 152 (1999).[2] The court must bear in mind the purpose of the testimony when addressing its reliability. *Mathis v. Exxon Corp.* 302 F.3d 448, 460 (5th Cir. 2002).

## II. ROGER CLARK'S PROPOSED TESTIMONY

Plaintiff presents Roger Clark as an expert on the tactical guidelines, standards, and training of the Houston Police Department ("HPD") and the HPD Academy, whether

---

[2] The *Daubert* factors include (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert,* 509 U.S. at 593-94.

2

Officer Foster and Sergeant Washington used excessive force, and the supervision of HPD officers. Clark has no experience with the HPD—instead, he served as an officer, rising to the level of lieutenant, at the Los Angeles County Sheriff's Department. Beginning in 1965, he was assigned primarily to the town of San Dimas, which has approximately 55,000 residents. He spent eighteen months as a staff jail deputy and two years as the administrator of the same jail. He trained new officers in state and department patrol procedures, field investigations, apprehension techniques, and emergency procedures. He taught at the department's Reserve Academy on topics including the legal and moral use of force and firearms, and he participated in department reviews of reasonable and unreasonable uses of force. As a sergeant and a lieutenant, he was a staff member for the Los Angeles County Sheriff Department Patrol School, where he taught department and state procedures on investigation and apprehension.

In 1988, Clark completed the Peace Officer Standards and Training ("POST") Command College, the equivalent of a two-year masters program. He achieved Advanced POST Certification in 1975. As part of the POST curriculum, Clark had extensive training in high risk vehicle stops. During the last five years of his career, Clark commanded the North Regional Surveillance and Apprehension Team ("NORSTAT") that investigated, observed, and arrested major criminals. According to Clark, many of these arrests occurred under "dynamic" circumstances, often during the commission of a crime. As a result of his work in NORSTAT, he wrote his department's Field Operations Directive 89-3, which advised on procedures detectives should use during tactical deployments. He left the Los Angeles County Sheriff's Department in 1993. Since that time, he has served as a police procedures consultant in hundreds of

lawsuits and as a substitute teacher. He also served as a district liaison for the State of Idaho Department of Juvenile Corrections.

At the time of his deposition, Clark was apparently not familiar with the training procedures and standards of HPD or Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE"). His expert report consists primarily of general reflections on police training, and human nature, including "muscle memory" and "fight or flight" impulses. He concludes that the HPD acted improperly in this case. Clark also filed a Supplemental Report, in which he opines on the twenty Internal Affairs Division ("IAD") reports Plaintiff provided him. Based on these reports, he concludes that the HPD officers do not have adequate simulations of chases and vehicle approaches, and that the HPD policy regarding high risk vehicle approaches is too brief and difficult to decipher. Further, he argues that the HPD Academy does not place enough emphasis on Firearms Stress Fire and Firearms Night Fire scoring. Finally, he notes that the closure of HPD's Tactical Training Village has hurt the training of HPD officers. Clark cites a study from the Washington Post which found that Houston ranked fifth among large cities for fatal shootings by the police.

### III.   DEFENDANT'S *DAUBERT* OBJECTIONS

Defendants argue that Clark is not qualified to testify as an expert on police procedure because his law enforcement experience was primarily in a relatively small suburban community near Los Angeles. Clark failed the captain's exam three times and finally left the Sheriff's Department in 1993. Defendants contend that Clark's last experience as a patrol officer was in the 1970s. Defendants criticize Clark's lack of knowledge about the HPD and TCLEOSE training standards.

Further, Defendants argue that Clark's theories about 'muscle memory" and "fight or flight" instincts are not supported by any medical or psychological training. Also, he has not independently reviewed the location where Carnaby was killed or any physical evidence from the scene. At the time of his deposition, he had no knowledge of the specific training of Officer Foster or Sergeant Washington. He has never published any articles regarding police procedures, the use of force, or vehicle pursuits, and, Defendants contend, his opinions and theories have no identifiable methodology.

At the *Daubert* hearing, Clark testified about his relevant experience and his study of the shooting in the instant case. In addition to his experiences and formal training outlined above, he was personally involved in approximately twenty five car chases and frequently drew his weapon. He did not participate in developing the high speed and vehicle approach policies in his department. He stated, however, that he has reviewed the high speed chase procedures in fifty to seventy five police departments across the country through his work as an expert witness. Clark admitted, at the hearing, that he has not reviewed the TCLEOSE manuals or the HPD Academy syllabus, but he has seen an HPD video training on high risk procedures. He stated that he believed Washington and Foster's actions were contrary to the HPD guidelines he had reviewed, which were very fragmented.

Applying the *Daubert* factors to Clark's report, he is qualified to give expert testimony on a limited range of topics. The Court will allow him to testify about his knowledge of POST standards for high speed chases and vehicle approaches as well as his own experience and training in law enforcement. Because his reports fail to demonstrate the requisite foundation, the Court will not allow him to theorize about

5

"muscle memory" or "fight or flight" instincts. Finally, he will not be allowed to comment on the adequacy of the training offered by HPD or the Defendants' compliance with HPD and TCLEOSE standards. Defendants' concerns regarding Clark's lack of experience in urban areas and the length of time since his service as a police officer are related to the weight of his testimony and can be raised on cross examination.

### IV. CONCLUSION

For these reasons, Defendants' Joint Motion to Strike Testimony of Plaintiff's Expert Roger Clark (Doc. No. 83) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Joint Motion to Strike Designation of Expert Witness List Supplemental Report of Roger Clark (Doc. No. 118) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the ___5th___ day of August, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.